IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**EDWARD YIN,**

    **Plaintiff,**

v.                                                        Civil Action No. **3:17cv296**

**CTI CONSULTANTS, INC.,**

    **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant CTI Consultants, Inc.'s ("CTI") Motion to Dismiss Plaintiff Edward Yin's Complaint[1] pursuant to Federal Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6).[3] (ECF No. 15.) Yin's attorney withdrew from the case. Yin responded, *pro se*, and CTI replied. (ECF Nos. 18, 19.) The matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331[4] and 28 U.S.C. § 1367.[5] For the reasons that follow, the Court will grant the Motion to Dismiss.

---

[1] CTI provided Yin with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (ECF No. 15.)

[2] Rule 12(b)(1) allows dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[3] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Yin's Complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## I. Factual and Procedural Background

### A. Summary of Allegations in the Complaint[6]

Yin began working at CTI in May 2013 as the Vice President of Engineering. During the course of his employment with CTI, Yin was the only minority employee at the Vice President or Regional Manager level; all other employees at these levels were Caucasian.

#### 1. Yin's Complaints about Fabrication of Data and Falsification of Reports

In 2014, two CTI employees brought concerns to Yin that the branch manager Parvis Falahatpour was fabricating data on laboratory and field reports to make it appear that certain construction materials had passed inspections when Falahatpour had no test results confirming this. Yin immediately contacted Falahatpour "each time"[7] the issue was raised. (Compl. ¶ 16, ECF No. 1.)

The first time Yin confronted Falahatpour, he admitted to falsifying data, but assured Yin that it would not happen again. After Yin received the second complaint about Falahatpour's data fabrication, Yin contacted Colin Stevenson, the President of CTI, and informed him of Falahatpour's actions. Colin Stevenson told Yin that he would talk to Ray Bradner, Falahatpour's immediate supervisor to address the issue.

---

[5] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367. Yin's Complaint also alleges violations of Virginia law.

[6] For purposes of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Yin. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[7] Yin does not allege the dates on which the employees expressed their concerns, but the Complaint implies that the two employees independently raised concerns at separate times.

2

Throughout 2014 and up until his firing in 2015, Yin continued to observe—and report to Colin Stevenson—incidents of Falahatpour fabricating data and falsifying laboratory and technician accreditation reports.

### 2. Yin's Complaints about CTI Technician Inspections

At some point in 2014, Yin learned that CTI was overcharging its clients for safety compliance inspections. As part of its services, CTI inspected construction projects for safety and compliance. Yin bore responsibility for certifying these inspection reports, which CTI technicians performed. Yin did not believe the technicians were adequately trained or that they spent enough time inspecting the construction sites. At some point in 2014, Yin learned that CTI technicians would frequently visit multiple construction sites each day for several hours each and spend only a few hours at each. CTI, however, charged clients for a full-day inspection.

On a number of occasions, Yin reported the overcharging to Colin Stevenson and told him that he could not participate in the fraudulent overcharging. Yin also expressed reluctance to certify inspection reports performed by non-qualified and non-certified technicians. Colin Stevenson told Yin that he would discuss the matter with Falahatpour and Falahatpour's supervisor, Bradner, who, along with Colin Stevenson, reviewed Falahatpour's invoices.[8] Falahatpour's behavior did not change.

In January of 2015, CTI asked Yin to manage part of the groups that Bradner and another regional manager, Michael Heyer, then managed. As a result, Yin's duties and responsibilities expanded to include the oversight of the operations of three offices in addition to his previous

---

[8] The Complaint lacks clarity regarding whether Yin had concerns about the non-qualified and non-certified technicians as it related only to Falahatpour, or if he had broader concerns about multiple technicians.

role. Yin's compensation, however, did not increase. Yin's expanded position also made him Falahatpour's direct supervisor.

### 3. Yin's Complaints about Disparate Treatment of CTI's Predominantly Minority Technicians as Compared to the Predominantly Caucasian Interns

In his expanded role, Yin observed disparate treatment among the technicians based on their race and nationality. During his tenure at CTI, the majority of the technicians were minorities from foreign countries. CTI also has an internship program for which it hires student interns from schools in Ireland. Despite the fact that the predominantly minority technicians were more qualified than the interns, the interns received more favorable treatment. For example, the interns received subsidized housing, a subsidized company truck, and gas cards whereas the predominantly minority technicians received none of these benefits. The interns also received priority when working hours were distributed, whereas the minority technicians were assigned whatever hours remained after the interns had been scheduled to work full hours. As a result, the interns received substantially greater pay, "both in terms of total wages and in terms of total compensation," than the predominantly minority technicians. (*Id.* ¶ 47.)

In March 2015, Yin complained about the disparate treatment of the technicians as compared to the interns during a senior management meeting, which included Branch Managers, Regional Managers, Vice Presidents, and Senior Executives of CTI. During the same meeting, Yin also complained that the "unethical practices"[9] he observed occurring in the company. (*Id.* ¶ 49.) In response, Chris Stevenson, CTI's owner and CEO, stated that "we made money last year before you took over this position." (*Id.* ¶ 50.)

---

[9] Yin does not specify what "unethical practices" he refers to. The Court infers that he references the fabrication of data, falsifying of reports, and overcharging of clients for construction site inspections.

4

### 4. CTI's Termination of Yin's Employment

On June 17, 2015, Colin Stevenson verbally informed Yin that CTI was terminating him, but did not provide an explanation as to why. Yin did not receive a termination letter until July 2, 2015.

The terms of Yin's employment were governed by an employment agreement (the "Agreement") between himself and CTI. The Agreement provided that Yin would receive ninety days' notice of any termination unless that termination was for "cause." The agreement did not define "cause." (*Id.* ¶ 54-55.) The Agreement also stipulated that Yin would receive four weeks of vacation and three personal days per year.

At the time of his termination, CTI told Yin that it would terminate him for "cause" unless he agreed to accept thirty days of pay, rather than the ninety days to which he was entitled under the terms of the Agreement. Yin refused CTI's proposal. As a result, CTI designated Yin's termination as for "cause" and refused to pay the ninety-day notice provision, which amounted to approximately $43,750.00. CTI also refused to pay Yin his accrued vacation and personal time, which was worth approximately $12,115.38.

### 5. The July 2, 2015 Termination Letter

On July 2, 2015, Yin received a letter from CTI stating the proffered reasons for his firing. The letter cited two principal justifications: insubordination and poor performance.

Regarding Yin's insubordination, CTI cited to Yin's complaints regarding "unethical practices." (*Id.* ¶ 65.) CTI criticized Yin for stating that project managers should not develop proposals for which they lacked training or experience. CTI also referenced Yin's use of strong language in the workplace as a basis for his firing. Yin alleges that Caucasian employees used strong language in the workplace and were not disciplined for doing so. Bradner, for example,

5

frequently "intimidated, yelled[,] and talked down to office [sic] and the predominantly minority technicians, often threatening them with termination if they did not comply with his demands." (*Id.* ¶ 68.)

Regarding Yin's poor performance, Yin alleges that CTI's letter mischaracterized Yin's job performance. The letter stated that Yin was expected to generate $750,000 in new business, but Yin claims that CTI had never communicated this expectation to him. The letter also claimed that Yin was responsible for a $590,000 loss in revenue under his supervision when, in actuality, this loss was almost entirely attributable to the failure of CTI to win a contract, a project for which Yin had no involvement in preparing the proposal. The loss was also attributable to "a non-compete between []Yin and his former employer," of which CTI was aware when it hired Yin. (*Id.* ¶ 69.)

CTI's Employee Manual requires that formal reprimands be put in writing using a specific "Employee Warning" form and copied to the employee's personnel file. (*Id.* ¶ 70.) Yin never received a formal reprimand for any of the alleged deficiencies to which CTI cites in its termination letter.

Yin filed a charge of discrimination with the EEOC which investigated the matter and issued a Notice of Right to Sue on January 12, 2017.

### B. Procedural History

On April 14, 2017, Yin filed a five-count Complaint bringing the following causes of action:

**Count I:** Disparate Treatment Based on Race in violation of Title VII

**Count II-A[10]:** Retaliation for Complaints of Race Discrimination in violation of Title VII

---

[10] Yin's Complaint includes two claims labeled "Count II." To avoid confusion, the Court will refer to the counts as "Count II-A" and "Count II-B."

| | |
|---|---|
| **Count II-B:** | Retaliation for Complaints of Race Discrimination in violation of the Virginia Whistleblower Act[11] |
| **Count III:** | Wrongful Termination in Violation of Public Policy for Refusal to Engage in Illegal Conduct[12] |
| **Count IV:** | Breach of Contract and Contractual Duty of Good Faith and Fair Dealing |

On July 28, 2017, CTI moved to dismiss all counts. CTI argues that Yin fails to state a claim for Counts I, II-A, II-B, and III, and also Count IV to the extent it raises a claim of breach of good faith and fair dealing claim. CTI contends that the breach of contract aspect of Count IV should be dismissed for lack of subject-matter jurisdiction, urging the Court to decline to exercise supplemental jurisdiction over this state law claim. Yin responded,[13] making few

---

[11] Yin cites to no statute for Count II-B. The Court infers that he brings this Count under Virginia's Fraud and Abuse Whistle Blower Protection Act (the "Virginia Whistleblower Protection Act"), Va. Code § 2.2-3011, which provides, in relevant part: "No employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower" and "any whistle blower may bring a civil action for violation of this section in the circuit court of the jurisdiction where the whistle blower is employed." Va. Code § 2.2-3011(A), (D). The Court cannot discern why CTI asserted in response to this count that "no such act exists." (Mem. Supp. Mot. Dismiss 10, ECF No. 16.)

[12] While he does not specify the legal basis for this count, the Court infers that Yin brings Count III under Virginia's public policy exception to at-will employment first recognized in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985). *See also McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 732 (E.D. Va. 2007) (noting that a "lawsuit brought under this exception is known as a '*Bowman* claim'"). The record does not clearly identify whether Yin was an "at will" employee, but the Court need no reach this issue when deciding this matter.

[13] In Reply, CTI argues that Yin's response to the Motion to Dismiss was untimely filed and "should be stricken from the record." (Reply Mot. Dismiss 2, ECF No. 19.) As this request is not properly before the Court in the form of a motion, the Court declines to strike Yin's response. Given that Yin filed this response in his newly-formed *pro se* status, the Court would be disinclined to strike the Response in any event.

In his Response to the Motion to Dismiss, Yin details extensive additional facts not contained in his Complaint. While the Court notes that despite acting *pro se*, Yin's Response clarifies important matters, including some substantive information, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan*

7

directly responsive substantive arguments and instead presenting extensive additional factual allegations.[14]

## II. Analysis: Motion to Dismiss

For the reasons that follow, the Court will grant the motion to dismiss as to Counts I and II-A. The Court will dismiss Yin's remaining state law claims—Counts II-B, III, and IV—for lack of subject matter jurisdiction.

### A. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and

---

*Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). The Court must consider only those facts contained in Yin's Complaint.

[14] Indeed, Yin's Response is formatted like a Complaint. Accordingly, pursuant to its obligation to construe *pro se* pleadings liberally, the Court will construe Yin's Response as a Motion to Amend his Complaint. The Court will grant this motion and allow Yin an opportunity to amend.

conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

### B. Obligation to Construe *Pro Se* Pleadings Liberally

Federal district courts have a duty to construe *pro se* pleadings liberally.[15] *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). That said, a *pro se* plaintiff must nevertheless allege sufficient facts to state a cause of action. *Id.* (citing *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md.), *aff'd*, 103 F.3d 120 (4th Cir. 1996)). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint. *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### C. Yin Fails to State a Title VII Disparate Treatment Claim

#### 1. Stating a Claim for Disparate Treatment Under Title VII

Title VII makes it "an unlawful employment practice" for any employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When asserting a claim of employment discrimination under Title

---

[15] Yin was initially represented by counsel in this case but now proceeds *pro se*. This duty applies only to the Response Yin filed *pro se*. (ECF No. 18.) The Complaint was not filed *pro se*. (ECF No. 1.)

VII, a plaintiff may prove his or her claim through direct or circumstantial evidence. *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99–100 (2003); *see Love–Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004). When, as here, the case does not involve direct evidence of discrimination, the plaintiff must rely on the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first demonstrate a prima facie case of his or her claim. *Id.* at 802.

To establish a prima facie case of disparate treatment, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she suffered from an adverse employment action; (3) at the time the employer took the adverse employment action he or she was performing at a level that met the employer's legitimate expectations; and, (4) he or she was treated differently than similarly-situated employees outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt.,* 354 F.3d 277, 285 (4th Cir. 2004); *Brockman v. Snow,* 217 F. App'x 201, 206 (4th Cir. 2007); *Scott v. Health Net Fed. Servs., LLC,* No. 1:10cv930, 2011 WL 3489612, at *6 (E.D. Va. Aug. 9, 2011), *aff'd,* 463 F. App'x 206 (4th Cir. 2012). Although a Title VII plaintiff need not plead facts that constitute a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002), a plaintiff still bears the burden of alleging facts "sufficient to state all the elements of her claim." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (internal quotation marks omitted), *overruled in non-relevant part by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015). Courts, nonetheless, "may look to the requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for relief." *Craft v. Fairfax Cty.*, No. 1:16cv86, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016) (citing 626 F.3d 187, 190 (4th Cir. 2010)); *see also McCleary–Evans v. Md.*

*Dept. of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015) (applying prima facie case as guide in motion to dismiss).

> Consequently, when a plaintiff's complaint sets forth facts in support of his [or her] claim for relief and tracks the language of the applicable cause of action, the legal conclusions "are not talismanic" because "it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage."

*Jordan*, 458 F.3d at 346 (quoting *Bass*, 324 F.3d at 765).

### 2. Yin Fails to Plausibly Allege a Title VII Violation for Disparate Treatment

Yin cannot proceed with his Title VII disparate treatment claim because, at the very least, he fails to adequately plead the fourth aspect of a prima facie case: that he was treated differently than similarly-situated employees outside his protected class.

Yin claims that "CTI disciplined [him] for actions for which Caucasian employees were not disciplined." (Compl. ¶ 75.) Specifically, CTI disciplined Yin "for using strong language in the workplace, but did not discipline similarly-situated Caucasian employees for using strong language in the workplace." (*Id.* ¶ 75.) Moreover, CTI disciplined Yin "for overseeing a decline in revenues, but did not discipline the Caucasian employees whose actions, prior to Mr. Yin's tenure, caused the decline in revenues." (*Id.* ¶ 75.) Further, "CTI exercised its discretion to terminate Mr. Yin for 'cause' when its practice in the past, regarding Caucasian managers, had been to terminate them not for 'cause.'" (*Id.* ¶ 76.) Although these facts could amount to plausible allegations that Yin was treated different from non-minority comparators, Yin omits facts regarding those comparators that allow the Court to conclude such persons were *similarly situated*.[16]

---

[16] Yin's allegation that he was the only minority Vice President or Regional Manager does not identify who the non-minority comparators were, or how they were treated differently.

When, as here, a plaintiff claims a violation of Title VII based "completely upon a comparison to an employee from a non-protected class, . . . the validity of [the plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). A plaintiff must

> show that [he or she is] similar in all relevant respects to their comparator. Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* (internal citations, quotation marks, and alterations omitted). Yin fails to plead facts that show such similarities between himself and any comparators.

Yin alleges generally that CTI did not discipline "similarly-situated Caucasian employees" who engaged in the same conduct for which CTI fired Yin. (Compl. ¶ 75.) However, Yin's allegation that these employees were "similarly situated" constitutes merely a "formulaic recitation of [an] element[] of a cause of action." *Twombly*, 550 U.S. at 555. This allegation, which "tracks the language" of Title VII, is "'not talismanic' because 'it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage." *Jordan*, 458 F.3d at 346 (quoting *Bass*, 324 F.3d at 765).

Moreover, "employees" and "managers" constitute general groups, too broad to amount to "comparators." Such broad groupings fail to show that the "employees" Yin references "dealt with the same supervisor, were subject to the same standards and engaged in the same conduct" as him. *Haywood*, 387 F. App'x at 359. Yin provides a single specific example of Bradner, whom Yin alleges "frequently intimidated, yelled and talked down to office [sic] and the predominantly minority technicians, often threatening them with termination if they did not comply with his demands." (Compl. ¶ 68.) Yin's example founders. Yin includes no facts indicating that he and Bradner had the same supervisor, were held to the same standards, or had

12

similar jobs. *See Haywood*, 387 F. App'x at 359. Indeed, the Complaint indicates that Bradner worked as a regional manager, while Yin held the position of a vice president. Yin fails to plead sufficient facts showing that Bradner and Yin were "similar in all relevant respects." Thus, Yin has not established that Bradner constitutes a comparator. *Haywood*, 387 F. App'x at 359.

Mindful that Yin need not establish a prima facie case at this stage in the case, the Court nonetheless "look[s] to the requirements of a prima facie case as a guide in assessing the plausibility of [Yin's] claim for relief" and finds that he does not state a claim, even construing his Amended Complaint liberally. *Craft*, 2016 WL 1643433, at *4 (citing *Coleman*, 626 F.3d at 190). The Court will grant the Motion to Dismiss as to Count I.

### D. Yin Fails to State a Title VII Retaliation Claim

#### 1. Stating a Claim for Retaliation Under Title VII

To state a claim for retaliation under Title VII, "a plaintiff must provide factual allegations showing: (1) engagement in a protected activity; (2) an adverse employment action; and[,] (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

Protected activities fall into two distinct categories: participation or opposition. *See* 42 U.S.C. § 2000e–3(a). Participation occurs when an individual "oppose[s] any practice made an unlawful employment practice by this subchapter." *Id.* "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. . . . Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

13

### 2. Yin Fails to Plausibly Allege a Title VII Violation for Retaliation

Yin alleges that on several occasions he "complained that predominantly Caucasian 'interns' received superior treatment to that received by predominantly minority 'technicians.'" (Compl. ¶ 81.) Yin voiced his "final complaint" at a senior manager meeting in March 2015 and was terminated in mid-June, three months later. (*Id.* ¶ 84.) Yin claims that the reasons CTI provided for terminating his employment were "false, misleading, and pretextual." (*Id.* ¶ 85.)

Yin cannot proceed with his Title VII retaliation claim because, at the very least, he fails to adequately plead the third element of a prima facie case: a causal link between the protected activity—his complaints about the disparate treatment of CTI's technicians—and the adverse employment action—his firing. The only fact Yin presents that suggests a causal link between his complaints and CTI terminating his employment is the timing—CTI fired Yin approximately three months after his "final complaint" about the disparate treatment of the technicians.

"Generally speaking, however, the passage of time alone cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). The United States Court of Appeals for the Fourth Circuit has held that "three to four months" of separation between engagement in a protected activity and termination of employment is "too long to establish a causal connection by temporal proximity alone." *Id.*; *see also Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (finding that "a three-month lapse is too long to establish causation, without more"); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting a ten-week gap "is sufficiently long so as to weaken significantly the inference of causation between the two events"). Accordingly, Yin's allegation

14

that CTI terminated his employment three months after he engaged in a protected activity, on its own, is insufficient to plausibly plead a causal link.

Again, while the Court is mindful that Yin need not establish a prima facie case at this stage in the case, it nonetheless "look[s] to the requirements of a prima facie case as a guide in assessing the plausibility of [Yin's] claim for relief" and finds that, even construing his Amended Complaint liberally, he does not state a claim. *Craft*, 2016 WL 1643433, at *4 (citing *Coleman*, 626 F.3d at 190). The Court will grant the Motion to Dismiss as to Count II-A.

### E. The Court Declines to Exercise Supplemental Jurisdiction over Yin's State Law Claims

United States district courts have supplemental jurisdiction over state law claims so long as those claims "form part of the same case or controversy" as claims over which the Court has original jurisdiction, such as federal claims. 28 U.S.C. § 1367(a). After dismissal of both of his federal law claims, Yin no longer has a jurisdictional basis that allows him to pursue his state law claims in this Court. As a result, this Court may now, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. *Id.* § 1367(c)(3). For the reasons stated below, the Court will decline to exercise supplemental jurisdiction and will dismiss Counts II-B, III, and IV for lack of subject matter jurisdiction.

#### 1. Standard for Supplemental Jurisdiction after Federal Claims Are Dismissed

Federal district courts have supplemental jurisdiction over state law claims that "form part of the same case or controversy" as a federal claim. 28 U.S.C. § 1367(a). A district court, however, may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, if federal claims are dismissed before trial, state claims should be dismissed as well).

"The doctrine of supplemental jurisdiction is one of flexibility, and there is no 'mandatory rule' requiring dismissal when the federal claim is disposed of before trial." *Peter Farrell Supercars, Inc. v. Monsen*, 82 F. App'x 293, 297 (4th Cir. 2003); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [subject-matter] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away."). Among the factors that inform the Court's discretionary determination are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110 (citations omitted).

### 2. The Court Lacks Original Jurisdiction over the Remaining Claims

The remaining three claims allege causes of action under Virginia law over which the Court does not have original jurisdiction.[17] In the Complaint, Yin does not, because he cannot, allege that any of the three remaining claims provide a basis for federal question jurisdiction. The parties' briefs rely exclusively on the application of Virginia law. Yin likewise has not alleged that this Court has diversity jurisdiction under 28 U.S.C. § 1332.[18] Thus, the Court may consider the remaining state law claims only if it exercises supplemental jurisdiction.

---

[17] The following claims remain: Count II-B—Retaliation for Complaints of Race Discrimination in violation of the Virginia Whistleblower Act; Count III—Wrongful Termination in Violation of Public Policy for Refusal to Engage in Illegal Conduct; and, Count IV—Breach of Contract and Contractual Duty of Good Faith and Fair Dealing.

[18] Section 1332 confers subject matter jurisdiction when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Here, the parties, both residents of Virginia, are not diverse and Yin does not allege that he is seeking damages in excess of $75,000.

### 3. All Factors Informing the Court's Discretionary Determination Favor Dismissal

Although the court has unbridled discretion in deciding whether to exercise supplemental jurisdiction in this case, *Carlsbad Tech., Inc.*, 556 U.S. at 639, the Fourth Circuit advises that the Court *should* consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," *Shanaghan*, 58 F.3d at 110. An evaluation of these four factors uniformly favors dismissal.

The Court quickly dispenses with its consideration of the federal policy factor. No issues of federal policy underlie Yin's remaining claims. All remaining counts allege causes of action under Virginia law. Neither the Complaint nor the parties' briefing on the Motion to Dismiss indicate how this case, absent the federal law claims, implicates federal policy.

The considerations of comity and judicial economy likewise favor dismissal. Yin's remaining claims rely entirely upon Virginia law. It would be imprudent for this federal court to suggest that it could more readily decide matters of Virginia law than Virginia courts could. For the same reason, allowing a state court to address state law matters would best serve judicial economy.

Fairness and convenience to the parties also weigh in favor of the Court declining supplemental jurisdiction. This case remains in an early stage of litigation. Yin has filed a Complaint, and CTI has moved to dismiss that pleading. The Court has not decided any disputed state-law-based claims. The Court has not entered any discovery orders, and no matters will remain under consideration after this Court issues its decision. Were Yin to subsequently file his state law claims in a court of appropriate jurisdiction,[19] the parties would, for all intents and

---

[19] The events giving rise to Yin's claims occurred in June 2015. Virginia has a five-year statute of limitations for actions based on written contract. Va. Code § 8.01-246(2). The

purposes, begin at the same stage of the litigation process. Accordingly, the Court's consideration of the convenience to the parties also favors dismissal.

As all four factors favor dismissal, the Court declines to exercise supplemental jurisdiction. The Court will dismiss Counts II-B, III, and IV for lack of subject matter jurisdiction.

### III. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss. The Court will dismiss Counts I and II-A for failure to state a claim and dismiss counts II-B, III, and IV for lack of subject matter jurisdiction. However, the Court will allow Yin to amend his Complaint. First, his Response to the Motion to Dismiss could be construed as a Motion to Amend given its complaint-like formatting and extensive substantive factual allegations. The Court would freely grant such a motion. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Second, Yin's Response raises new issues, factual and legal, in a non-prolix manner. Given his *pro se* status, leave to amend should be granted.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 3/30/18

---

Virginia Whistleblower Protection Act has a statute of limitation of three years. Va. Code § 2.2.-3011(D).

18